The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez! Oyez! Oyez! All persons have any manner or form of business before the Honorable. The United States Court of Appeals for the Fourth Circuit are admonished to draw nigh and give their attention for the Court is now sitting. God save the United States and this Honorable Court. Good morning, everybody. Please be seated. Welcome to the United States Court of Appeals for the Fourth Circuit. We have three cases on for argument this morning. First up is 24-0141, Skyline Tower Painting v. Goldberg. Let me just explain what we're going to do in terms of the order of the arguments. Mr. Prather, you will go first. Mr. McCarran, you'll follow. Ms. Green, you'll go third. Mr. Richardson, then we'll hear from you. And then we'll hear rebuttal from the two lawyers representing the petitioners. So that's what we're going to do. I understand, Mr. Richardson, from the clerk that you had indicated that you might want to seek additional time. I can tell you we're not going to agree to that. So you can ask, but the answer is no. I appreciate it. Thank you. Mr. Prather. Good morning, Your Honors, and may it please the Court. My name is Roy Prather, and I represent the defendant Television Tower, Inc., joined by my colleague, Colin Gannon, in this appeal of the district court's remand decision under the Class Action Fairness Act, specifically the local controversy exception. Was it Mr. Prather? Yes, Your Honor. I apologize for not pronouncing your name correctly. No worries. The district court's decision was erroneous and should be reversed because it failed to properly apply the significant basis and significant relief prongs of the local controversy exception under the Class Action Fairness Act. Initially, the Class Action Fairness Act and its purpose requires that generally when there is a class action that involves both a local and an out-of-state defendant, jurisdiction should lie with a federal court. There is no dispute in this case that the defendants, when they removed the case from state court to federal court, satisfied those requirements in that there was one defendant, Skyline Tower Painting, that was out-of-state. It's a Colorado company, also based in Nebraska, and the other defendant, Television Tower, Inc., is based in Maryland. Additionally, the case involved a mountain controversy greater than $5 million, and the other requirements were satisfied. However, the plaintiff sought to remand the case to state court under the local controversy exception. I'm not going to walk through each of those factors because there are really two critical ones that I think require the court's attention here and really inform the nature of the appeal that was made. There's one other factor that also is involved, but my friend from, excuse me, Skyline will be taking that on during his time. With respect to the substantial basis or significant basis prong, that requires that the local defendant be a significant defendant for purposes of the conduct that's the basis of the claims that are at issue and the relief that's sought by the plaintiffs. In this instance, Television Tower, Inc., the local defendant in this case, was the party that owned the property that the tower that was work was performed on by Skyline Tower Painting that resulted in paint flakes being dispersed throughout the area, as the plaintiffs have alleged. Here, the Skyline was the party that participated in the conduct that actually resulted in the paint flakes being removed from the tower and escaping to the plaintiff's properties that have now been the basis. Doesn't the local controversy exception contemplate that there can be more than one significant defendant? It does, Your Honor, and when looking at whether there is more than one significant defendant, the analysis requires a comparative view of what the conduct was of those defendants relative to the other defendants in the case. And in this instance, the conduct that actually forms the harm that's actually underpinning every single claim that's been alleged by the plaintiff is the power washing of the tower that resulted in the paint flakes escaping from the tower and being deposited on, or at least allegedly deposited on, the plaintiff's properties. Well, that's certainly true that that may have been the final event that resulted in this calamity, but your colleagues on the other side allege other activity. You may disagree whether or not it's significant, and maybe you can tell me whether or not it's sufficient to simply make the allegations, but they allege, among other things, that your clients were negligent or omitted, didn't take particular attention with respect to licensing, that they participated and supervised the activities of the painting company involved in this case. So there are a number of allegations that suggest that this wasn't simply a contractor who stood by and just watched as the activity of the painting and the flaking of the lead took place, but took on activities beyond simply hiring the contractor. First of all, do you agree with those factual predicates? And if they're, in fact, accurate, is that enough to make your client a significant defendant? First, Your Honor, no, I do not agree with those underlying factual predicates. Why not? Because the complaint itself, as alleged, doesn't provide those factual predicates either. On the one hand, it states that TTI directed the activities of this specialized contractor to perform this painting work, but at the same time alleges that that specialized contractor does this particular work on these types of towers and is the party expected to understand and know how to perform that activity. I think the Allen v. Boeing case that the parties discussed in their briefing and that was discussed as well by the district court is particularly relevant here in the Ninth Circuit. There was a property owner in this instance. That property owner was out of state. They allege that TTI controlled the manner in which Skyline conducted its hydroblasting work, including acts or omissions that led to the contamination. That's pretty broad and encompasses. That's an allegation in their complaint. Yes, Your Honor, and it's a conclusory allegation that actually isn't supported by any other factual claim within that complaint and is contradicted by the other allegations that they make regarding the steps that Skyline itself took with respect to hydroblasting the tower. The directing of the activity by TTI is more akin to simply needing to hire a contractor to complete painting and then instructing that contractor to, using its expertise, complete the project that's been requested and not specifying how that's to be completed because TTI does not have the knowledge or expertise for how that is appropriately conducted in the first place, which brings me back to Allen v. Boeing, which in that instance, there was the property owner who contracted with another party to conduct a remediation of its own property and both parties were sued when the contamination that was at the property escaped from the property and contaminated other properties. In that case, the court looked at the conduct specific of those two parties and found that the owner of the property, even though it was the one that owned the property where the contamination originated and actually created pollution itself at that specific property, was not as significant as the activity that resulted in that contamination spreading to other properties. Now, in that case, the local defendant was actually the contractor that spread the contamination. It wasn't the owner, whereas in this instance, the local ---- I just want to make sure that the ---- I'm switching gears for a second. Is your colleague going to address the two-thirds of ---- Yes, Your Honor. Okay. Yes. Sorry, I wasn't clear on that. Thank you. Mr. Prather, sort of the tone and tenor of the allegations with respect to TTI is that your client was negligent in hiring this contractor and maybe you think that's just a conclusory allegation. There are some allegations that TTI failed to confirm whether or not the contractor was actually licensed to do the work. Is negligent hiring? Do you think negligent hiring is enough? No, Your Honor, I do not. Not when the harm that's alleged is not related specifically to the hiring, but the conduct that occurred subsequent to that hiring. The gist of the allegations that are being made that underlines every single harm and every single potential claim is that there was power washing on the tower that caused the paint flakes to escape from the tower. Now, with respect to comparing the relative conduct of those parties, and this is consistent with the analysis that the court did in Allentown v. Boeing, the activity of the contractor, the gist of which was that not simply owning the property that contains the contamination that was spread, not simply even generating at the property itself the potential contamination, was not the primary government of that complaint, but rather the actions that led to it spreading to other properties. The allegations that have been made in the complaint by the plaintiff suggest a similar circumstance here. And additionally, where they don't specify or otherwise differentiate, they attribute all of those activities to the defendants collectively. And similarly, when there are collective allegations being made as to the defendants, that doesn't provide any specificity by which to compare or otherwise determine which of those defendants is significant. And because the Class Action Fairness Act counsels towards maintaining federal court jurisdiction, courts that have encountered that scenario find that that doubt should be found in favor of keeping the matter in federal court. You've spent most of your time talking about conduct and whether or not conduct alleged is significant enough to implicate both defendants, including your client. Do you have anything to say about the nature of the relief that's requested here? It seems to me that the complaint alleges or makes allegations or requests for relief that equally implicate both defendants. So why isn't that enough, at least with respect to that prong of the analysis? With respect to that prong, it's similar to the analysis for the significant basis, whereas if that complaint, the out-of-state contractor or defendants, the relief sought there is not as significant as that sought from the local defendant, that's not a basis of viewing the local defendant as a significant party upon which relief is being sought. Ultimately, whether it's less or equal, that still counsels towards keeping the matter in federal court. One question. If we agree with you that you have an appeal of right, which you argued under 1291, does that render it unnecessary for us to reach the question of whether there are appeals under 1453? It does, Your Honor. However, it is still a live question with respect to the availability of appeal under both of those. It's TTI's position that a direct appeal under 1291 is available and appropriate and just provides an alternative means of obtaining an appeal, which would be more expedited under the Class Action Fairness Act statute. Thank you, Mr. Pritchett.  Mr. McCarron. Good morning, Your Honors. Thomas McCarron on behalf of Appellant Skyline Tower Painting, Inc. May it please the Court. We ask this Court to reverse the District Court's order remanding this matter to the Circuit Court for Baltimore City and hold that the appellees here, plaintiffs below, did not meet their burden to establish that two-thirds of the proposed class members are Maryland citizens in order to qualify for the local controversy exception to the Class Action Fairness Act, or CAFA. The very purpose of which is to confer broad federal jurisdiction over class actions, naming defendants who are not citizens of the form state, with only narrow exceptions, for which the burden is on the parties seeking the remand to establish exist. In so doing, this Court may decide to address certain matters that appear to be matters of first impression in this circuit, at least. First, whether a court in reviewing a remand motion may consider materials outside of the pleadings or go on to consider extrinsic evidence such as was submitted and considered by the District Court here.  Can I ask you about, with respect to this issue, I mean this isn't a case where there is simply an allegation with respect to citizenship and the plaintiff stands on those allegations. There was at least an effort to try to present some evidence in support of that allegation. What else do you think the plaintiffs or the petitioners in this case were required to do? Well, first of all, I would note that in sort of discussing Fourth Circuit lack of precedent, the District Court itself sort of referenced a number of things that aren't present here. License, motor vehicle licensure, and other items that go toward domicile, which is, of course, the test for citizenship relative to an individual, not mere residency. Here, all that was presented to the court below were literally a series of addresses from which the paralegal, the affiant, used an app or two to, first of all, determine that the addresses were within 4,000 feet radius of the tower. We don't know anything about that application. There's no offer of proof as to the reliability of that. Secondly, the list of addresses commingled initially and then corrected, I think, on reply only as to government bodies, residences, businesses, and government-owned properties. We're not told how many of those are businesses. We are later told with the affidavit on the reply how many were government offices or government properties. And I think that that may be so, but at least there were some attempts to distinguish primary residences from businesses and identify whether or not the businesses had their principal place of business in Maryland, whether or not they were organized in Maryland, all to suggest that it would be reasonable to conclude that all of these plaintiffs, whether businesses or at least a significant number of them, enough to get over the two-thirds hump, were, in fact, by virtue of having primary residences in this neighborhood and or businesses organized in Maryland with their principal place of business in Maryland, were, in fact, domiciled in Maryland. Why isn't that a reasonable conclusion to draw from this evidence? Well, first, as to businesses, what the other side did, in fact, was to identify businesses. Again, we don't know how many in this list are businesses that are listed as having a principal office, quote, unquote, in the state of Maryland. That is not to say that that is their principal place of business, as this court has recognized principal place of business is sort of the nerve center, the headquarters, where officers, you know, make decisions. And that's if the business is a corporation. We don't know of these businesses, do we? We don't know of the business entities, whether they're corporations or partnerships or others. LLCs. That might not, in fact, have Maryland qualifies there. Absolutely correct. And I think that that is significantly deficient. And then very quickly, on the just personal residences, we don't know when. I see that my time is up. No, go ahead. Finish your answer. With respect to the residences, we don't know, first of all, when that was declared as principal residence. The key in determining diversity, of course, is when the complaint is filed. We don't know anything about whether or not these are, in fact, domiciles, which requires an intent to permanently remain, basically. All right. Thank you. Thank you, Your Honor. Ms. Simmons. Good morning, Your Honors, and may it please the Court. Grace Green Simmons for the U.S. Chamber of Commerce. The Chamber appreciates being heard on this jurisdictional issue. This Court should join its sister circuits and hold that remands based on CAFA's exceptions can be appealed as of right under 1291. The baseline rule for remand orders of all kinds is that those remands that can be appealed are appealed as of right under 1291. The remand kicks the parties out of federal court, back to state court, ending the federal case. That fits squarely within the definition of a final order. Now, 1447D bars certain remand appeals, but not those based on grounds external to the removal process. That's a Supreme Court rule, and we have to agree with the Supreme Court on that. But if you read that 1447, it looks pretty clear to me. It's much broader than what they say, but we are limited to the narrowness of the Supreme Court's determination. That's correct, Your Honor. In Thermatron in 1947, the Supreme Court read 1447D's bar in connection with 1447C's two categories. And so as the Supreme Court has reaffirmed several times since, that bar on appeal has to be limited to remands based on lack of subject matter jurisdiction and procedural defects in the removal itself. So your whole contention is that if it's not under C, it's one of those grounds for D, that then you have an appeal right that exists under 1291? Yes, Your Honor. And the courts of appeals have recognized that. The Supreme Court has recognized that. There's a number of grounds for remand that fall outside those two categories. Abstention is a big one. Others include form selection clauses and contracts that say you have to be in state court, not federal court. There's doctrines like waiver by participation in the state court. These are all grounds that are external to that removal process and so don't fit within C and so aren't barred by D. You're not expressing an opinion on the merits then? No, no. So you're going to tell us that we can take this appeal? Yes, Your Honor. The chamber takes no positions on the merits of the local controversy issue before the court. Our sole ask is that this court hold that appeals like the ones at issue here can be brought through 1291 rather than having to go through 1453C's permissive appellate procedure. Is there a, well, I guess you're not taking a position in this case, but would it matter? I mean, is there a concern about whether or not if we don't grant, if we don't agree with you in this case that it might have implications in future cases? Because it seems the argument here is that whether 1291 or the other subsection applies, they satisfy both in this case. And, of course, I don't ask you to take a position there, but what's the significance of ruling that 1291 applies in this case for future cases? The benefit of doing so, Your Honor, is to provide much-needed guidance and to make this process more efficient for litigants in this circuit, including this court. And that's exactly what the Fifth Circuit recognized in Cheapside when it was faced with a near-identical situation. There, the Fifth Circuit had actually already granted the 1453 petition and yet still had the parties' brief jurisdiction under 1291 and then went on to hold and make clear that they could have just proceeded through 1291. And the Fifth Circuit explained that it was doing so so as to make that process more efficient for everyone. Do you have anything else? If the Court has no further questions, we thank the Court for its time. Thank you very much. Mr. Richardson. Good morning. Good morning. Ronald Richardson on behalf of the appellees. And I'm going to start with the 1291 issue because that was last argued. CAFRA has its own appealable statute, 1453. There's no need for 1291. In fact, 1291 has no purpose under CAFRA. It's a final judgment statute on the merits. The case law says that for purposes of 1291, you have to have a final judgment on the merits. Remand orders have nothing to do with anything on the merits. So for that reason, 1291 is inapplicable here. And as was pointed out earlier, there's a 1453 petition that was filed in this case. And I want to go to that very quickly. So you don't think you can do it both ways? I don't think you can. One's not designed for that. It was never intended for that. It has no purpose for that. And it has its own statute, which is very, very important, specifically for the facts of this case. And I will go into that right now. In this case, the appellants petitioned this court on March the 11th of 2024. Judge Rubin entered her order on March the 10th of 2024. That is 11 days that they filed their petition. The Rule 1443C says you've got to do it within 10 days. And that's very important because the Murdoch case that has held Fourth Circuit, that this whole issue of the petition, 1443, is jurisdictional. And the Bowles Supreme Court case has held that the timeliness of the filing of your petition is critical because if you don't meet it, there's no jurisdiction on the federal appellate level. Wasn't there a note that the order was entered on March 11th, 2024? I'm sorry. 2024. No, no, no. It was. You're right, Your Honor. But here's what's. So there was a note that the order was. I mean, the docket says it was filed March 10th, but then there's a note that says it was entered March 11th. Does that matter? It does matter. To your argument? It does. And here's. So Local Rule 102.5A says that the electronic filing of any document, including an order by a judge, constitutes the entry of that document. And so she electronically filed it on the 10th. And Federal Rule of Civil Procedure 77A says every district court is open every day, any day. Federal Rule of Civil Procedure 6, you don't exclude any days. And Federal Rule of Civil Procedure 77D2 says that you can't claim lack of notice. The district court entered this remand order on March 10th, which is confirmed by an entry on March 11th, but it was entered on March 10th. And that's based on the rule that you did, correct? That's right. So that's when it became effective. And you can't claim that you didn't know. You can't claim it was on a Sunday. So that starts the day. So you count 10 days, they should have filed it by March 20th. And they filed it on March 21st. Ergo. But she signed it on March 10th, but it wasn't actually filed until March 11th. No, it was entered on March 10th. Filed on the docket. If you look at the record in terms of when it was actually filed on the docket, it looks like May of March 11th. I believe it's March 10th, Your Honor. And if it's March 10th, they're late. And I raise that only for the purpose of establishing that we may have an issue of whether or not the appellate court has jurisdiction. And I will leave that for your honors to decide from there. But to be clear, the 58C does say that it is effective when it's actually electronically filed. The docket, you agree with that, don't you? And filed happened on this case on the 10th. My question is, if the record does show she signed it on one date but it was actually filed on a different date, it's the filing date that controls. Is that right? That's correct. If that's the record. That's correct. And if you look at the docket, it says the 10th. And so I think that they're late. This court should stay in state court. I mean, this case should stay in state court. This is truly a local controversy. If ever there was one. The tower is in Baltimore City. All of the effective properties are in Baltimore City. The legal issues. But are two-thirds of the class member citizens of Maryland to have you provide? I think that's, at least that's the question I ask. Have you provided sufficient evidence to support that? And for me, how is it that we know that any of the owners on that chart ever had an intent to remain in Maryland? So in their removal to federal court, the appellants concede the following, paragraph 11. Pleasures of residence of Baltimore City and own property in Baltimore City. One's place of permanent residence is generally also the place of domicile, absent additional facts demonstrating an intent to do otherwise. And they cite the Bainham case, which says, explaining a person's domicile is the place where they have true, fixed, permanent home without any present intention of removing therefrom and to which place he has, whenever he is absent, an intention of returning. They cite that in their notice of removal. Right, because that's the law. That's domicile equals residence plus intent. And I'm trying to understand how the chart the appellant made equals residence plus intent to remain. Perhaps it equals residence. I don't know. But how does it equal intent to remain? So on the chart, there's a column all the way to the right that's either yes or no. And Ms. Greeley, in performing this function, creating this chart, if she could not determine by absolute certainty that it was their primary residence on the chart. How did she know by an absolute certainty that it was her primary residence? Did she call them and ask them? No. When you go to the SDAT website and to that tool, it has primary residence section right there. And it tells you yes or no on that. And it tells you if that's a primary residence or not. So she was able to determine based on the research tool that was available to her. So based on primary residence, you're saying that primary residence equates to intent to remain? Yes. Okay. So where in the record can I find what tax year it was that the appellant considered in evaluating the principal residence? What tax year did she look at? At the time that she did the affidavit, she looked at that, those websites. When was that then? I mean, I'm sorry. Yes, that was back in we filed a remand motion. I want to say early. Go ahead. Go ahead. No, it was Judge Rubin had that remand order for a year. So I think we filed it sometime in 23. She issued her ruling in 24. And we're now in 25. So she looked at tax year 23? Yes. Or 22? I believe it's 23 because she did not do it at the time that the incident occurred, which was 22. She certainly didn't do it then because we didn't even file the lawsuit until after. How do we know that if she did it in 23, she all right. Go ahead. It's confusing to me as to what tax year. So then can I ask you a question about the businesses? I know that her method for the corporations was to see, I guess, if they had their principal office.  And she took care not to make sure they weren't LLCs or some other type of. How do we know that? So all of these, so you're saying that all of the businesses on this chart are corporations and not some other business entities? Either corporations or LLCs, but Ms. Greeley determined that under either scenario, if their principal place of business was located in Maryland, she put a yes. If she could not make that determination at all, she just erred on the side of caution and put a no. But I will tell this court, because I can proffer to the court, there's 550 businesses on that list. There's 70 government-owned properties on that list. There's 234 individuals on that list that have been registered as no. You add them up, it's 854. You do the math, that's 69%. That's even if you exclude them all, that you still meet that burden. So I do not think it's, and it's all about practicality and reasonableness. And Judge Rubin really did, in my humble opinion. So you're saying if there isn't sufficient basis for any of the businesses, if we took them all out, the numbers still add up to more than two-thirds. That's correct. And then we'd still have the intent to remain, or I might still have the intent to remain issue to sort out. Well, let me ask about that, because that's a good point. But as I understand the law, or at least the law that you want us to apply in this case, because, Kafa, the court's decision whether or not to accept, keep control of the case is not a jurisdictional issue, then this two-prong requirement of residence plus intent to remain doesn't necessarily apply in this context. You can simply rely, at least according to some cases, on a presumption that residence equals domicile. And that's what you're arguing in this case, right? That's right. And I'm counting on you. No, no, go ahead. So it's rebuttable, though. Sure, right. But did they provide any evidence at all? They've had all this time. The court has no evidence from the appellants as to anything to rebut the evidence that we've provided to the court. And the case law says that, you know, that's a Mason case particularly. When you do that, the court can then find, you know, under his or her discretion, that that standard has been met. There's no evidence to rebut it. Finally, I just want to sum up by saying we have sued them all for the same damages, practically the same counts except for TTI where we sued for negligent hiring, retention, and supervision. And the claims that we have, the allegations that we have against TTI are significant. I thought I would fairly lay them all out, and so I won't go there. Your colleagues on the other side complained that they were just conclusions, there were no facts to support the conduct or alleged conduct. Why don't you tick through what you think are the significant things that TTI did or didn't do which hooks them into this case? Absolutely. First of all, TTI is the owner of the tower. TTI knew, there's no evidence Skyline knew, but TTI knew that there were 2.5 tons of lead-based paint on that tower, and they knew it since the 1980s. All of that's in the complaint. We're talking about conduct, right? Are you saying that that's conduct? Well, all of it goes towards the conduct, which is like they hired them. They hired them to hydroblast, and they knew it was lead-based paint. They hired them to hydroblast. They could have hired them to scrape it off. They hired them to hydroblast it. I'm sorry. So you're alleging that that decision to hydroblast as opposed to scraping is misconduct on their part? If you know that what you're hydroblasting off is lead-based paint, that is a tremendous health risk to the community right under that tower who have a park, a community park, Rock Rose Park, kids playing in the playground there. The significance of that decision to make them hydroblast as opposed to scrape is critical, and that's why we ask for punitive damages, because they knew better. And how do we know that TTI made that decision as opposed to the contractor? Because there's no evidence the contractor had any knowledge that there was any paint on that structure. There's no evidence of that. We haven't done any discovery yet. This is all complaint-based. But what we do know is that TTI told the community association that they knew it was lead-based paint since the 1980s. And so what we do know is they hired them to hydroblast. We haven't seen the contract yet. This is all going to be in discovery. But our allegations at this point says that they knew this, which is very, very important conduct. We have sued them for strict liability. I'm sorry, for several, joint and several liability. And when you do that, the case law has said that that's a significant, you can find both, because there's more than one that can be significant, both to be significant for purposes of this particular element. And I can go on on the list because they didn't do anything to make sure that this contractor was properly accredited. And it is incumbent upon the general contractor here to do that when you know what you're doing is essentially a lead abatement process that's not handled properly. And they control the manner in which how they perform the work. So I say all that to say that there's no question that TTI is a significant player in this and that it's a party, a defendant, a local defendant, in which there has been, from which significant relief is being sought. And so I think that we have met that burden. I think the court found that we had met that burden. We met the burden for a significant basis, and I think the court also found that. And the court reasoned that it would be completely unworkable to go through 2,785 Peter DePlass members and find out specific details as to each. You don't need to do that, especially when you have the presumption. Is that burden by proponents of the evidence? It is. Their burden or our burden? Your burden. Proponents of the evidence. And is that established within this circuit, or is it something we have to decide? No, I believe that's established, but there is case law that said that, despite proponents of the evidence. I don't have it at the tip of my tongue, but I believe there is case law that says that. But if not, I'm sure you'll let me know. When was the complaint filed? What was the date of the complaint? I have those notes, Judge Thacker, but I don't remember. It was filed about a week or two after the Maryland Department of the Environment filed theirs, but it was in.  Yes. Okay. Well, then does this chart include people that own property after the complaint was filed? I think the complaint was filed May 8, 2022. Yes. Does the chart, you said she looked at tax year 2023. So doesn't the citizenship have to be established at the time the complaint was filed? How do we know that these people that are on the chart lived there at the time the complaint was filed since she looked at tax year 2023? So they are still removing paint chips from the tower. It has not stopped. There is a continuation of debris, lead paint chips falling on that community to this very day. So to the extent that people have moved or have sold or have bought property afterwards, they're all putative class members because their properties are still being contaminated. So I don't think it really matters whether or not it was a particular day that she did her analysis because it's an ongoing thing, the putative class members. But the point of the matter is that way more than two-thirds of them are citizens of the state of Maryland, and we meet that prong for that reason. And so I think that this, like I said at the very beginning, this is truly a local controversy. And the whole purpose of the exception is that if it's national importance or if it's interstate commerce, it goes to federal court. But if it's a truly local controversy, then it should stay. And that's why Congress created the local controversy exception is because there may be instances where cases belong in state court. We respectfully submit this is one of them. All right. Thank you, Mr. Richardson. Thank you very much. Mr. Prather. Thank you, Your Honors. I'll be quick. Two key points. With respect to this timeliness issue that counsel for the plaintiffs raised, I would direct the court to JA6 in the joint appendix, which is a copy of the docket, and specifically 23 and 24, those entries that provide the memorandum opinion of the judge and the order, which specifically notes that it was entered March 11, 2024. And additionally, in the briefing and the discussion that the parties had in their briefing, note that the ECF email that notified the parties of that order was also received on March 11, 2024. And so the idea that March 10th would be the appropriate time to expect the parties to respond within 10 days when they had no knowledge of that order on March 10th just is not consistent with what the rule requires and it's not consistent with the practicalities of an order being signed on one day and entered on another. With respect to the claims that were made in the argument regarding the conduct, again, I would point the judges to this concept of group pleading that the plaintiffs did throughout their complaint, which essentially claimed that, contrary to what we just heard, both TTI and Skyline knew that there was lead-based paint on the tower. The complaint actually makes that allegation in multiple of the claims that were alleged. And, again, if you look to the kitchen case that TTI cited in relation to the Eighth Circuit's analysis of that significant or substantial basis element, when you have allegations that allege equal conduct or shared activity among those parties, that's insufficient to, comparatively speaking, point to one particular defendant as being more significant than the other here in particular as it pertains to the conduct of TTI. Does one have to be more significant than the other? Or can there be more than one significant party? We talked about that earlier. The local defendant needs to be more significant because that is the anchor by which the court will decide to treat it as a purely local controversy under that exception. So comparing the conduct of that local defendant or the local defendants to the out-of-state defendants, the local defendant needs to stand out in terms of its conduct relative to those out-of-state defendants. And that's key because going back to one of the circumstances that was just previously identified, which is interstate commerce, we have a circumstance here where the commerce was the transaction between the local defendant, TTI, and Skyline, a Colorado company, to conduct that painting work at its tower. And that painting work became the basis for the complaint and the claims that have been alleged. When you have that circumstance, that is a situation where the Class Action Fairness Act counsels that those litigations should proceed in Federal court. Can I ask you about the difference between significant and primary in the statute? So there's D-4A talks about the most significant defendant. D-4B talks about the primary defendant. That would seem to suggest that significant doesn't necessarily equate to the distinction that you just made about being most significant. Well, so it does in the sense that as the court looks at significance, it's not so much that there is one defendant that is primary but that that defendant relative to the other defendants has a more substantial role. I believe in the Kaufman case it was its conduct underlies or relates to all of the claims that have been asserted. And here the conduct that does that is the power washing of the tower that's been alleged by Skyline.  Thank you, Your Honor. Thank you. Thank you, Mr. Prather. Mr. McCarron. Just a few quick points, Your Honor. First of all, on the burden of proof, I think Judge Wynn asked about that. There, in fact, is a split of authority. The Fifth Circuit, for instance, in the Arbuckle Mountain case cited in the briefing, used a reasonable certainty test, which is a more enhanced burden of proof, in keeping there with the notion that CAF's intent is to extend broad federal jurisdiction and the exceptions are to be narrow. Here, district court in several instances used a set. She used a preponderance of the evidence standard. So if this court concludes that the proper standard is the reasonable certainty standard, on that ground alone the underlying decision should be reversed. Nobody else has done that. That's true. The Fifth Circuit does stand alone. That alludes to this, that nobody's done that. So why would we do that? Well, again, I think it's more in keeping with the notion that the exceptions are to be construed narrowly in keeping with congressional intent. But I will pivot to say, whether we use a preponderance of the evidence standard or a reasonable certainty standard, where there is confusion about the citizenship of the putative class, there can be no preponderance of the evidence or much less reasonable certainty. On the affidavit, the affidavit and the spreadsheet did include and continued throughout the district court's analysis businesses. They included government. Even if we, opposing counsel says, even if we take out all the businesses, we can do the math and see that it still meets the two-thirds number. That's not possible because I don't know how many, nobody knows how many of those addresses are business addresses. We're never told. So, therefore, we don't know how much you deduct and whether or not it gets them beyond or below the threshold. If they do need to show residence plus intent to remain, what else would, I mean, how are they? Supposed to do that? What more do they need to do? Well, again, the district court itself mentioned that the Fourth Circuit had not reached conclusions about what is sufficient and then rattles off about three things that are missing here. A licensure of individuals to determine where they intend, where they vote. All of those things you said when you first got up here.  Well, so I guess the first question we would need to decide is whether or not residence alone is sufficient to establish a presumption, in which case you would have to come forward with evidence to contradict or rebut that presumption. You'd probably disagree with that test, but if that's the test that we applied, do you still win? Yes, because, again, we don't know how many of these are residences or businesses. I don't know how many there are. Nobody does. We're not told. So whatever the proof may be of whatever we assume about residences, we don't know how many in the spreadsheet list are residences. That's the problem. And why would you argue that we shouldn't make the presumption that residence alone is sufficient? Well, in a broader sense, not so much in this case, because I don't think you can make any presumptions in this case, given the nature of the proof. In the Evans case, for instance, again, in keeping with a more restrictive approach, because that's what the exceptions are supposed to be, the Evans determination was that mere residency did not establish or give rise to a presumption of citizenship, because citizenship means so much more. Even in the Russo case, the case I would probably guess that the court below most notably relied on, I would say, a trial court-level case. There they were dealing with records of owner-occupied taxes, wherein the court took pains to say that the owners had to submit affidavits, giving an intent that they live there with some permanency. So that's absent here. So even the Russo case presents more than was presented here. That's a district court case, though, right? It is, but it's the one that this district court seemed to predominantly rely upon, and of course we're here at a higher level. We understand that. Thank you, Mr. McKibbin. Thank you, Your Honor. I want to thank the lawyers for their fine arguments this morning. We'll come down, greet you, and move on to our second case. Thank you.
judges: Albert Diaz, James Andrew Wynn, Stephanie D. Thacker